1

2                                                            O

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   A-1 TRANSMISSION AUTOMOTIVE )   CV 10-8496 RSWL (SSx)
     TECHNOLOGY, INC.,           )
12                               )   **ORDER re: Defendant AMCO**
                 Plaintiff,      )   **Insurance Company's**
13                               )   **Motion for Partial**
         v.                      )   **Summary Judgment [43]**
14                               )
     AMCO INSURANCE COMPANY,     )
15                               )
                 Defendant.      )
16   _____)

17       On April 6, 2012, Defendant AMCO Insurance

18   Company's ("Defendant") Motion for Partial Summary

19   Judgment was set for regular calendar before the Court

20   [43].  The Court having reviewed all papers submitted

21   pertaining to this Motion and having considered all

22   arguments presented to the Court, **NOW FINDS AND RULES**

23   **AS FOLLOWS:**

24       The Court **GRANTS in Part and DENIES in Part**

25   Defendant's Motion for Partial Summary Judgment.  The

26   Court **DENIES** Defendant's Motion for Partial Summary

27   Judgment in part as to Plaintiff A-1 Transmission

28   Automotive Technology, Inc.'s ("Plaintiff") bad faith

1  claims.   The Court, however, **GRANTS** Defendant's Motion

2  for Partial Summary Judgment in part as to preclude

3  punitive damages.

### I. UNDISPUTED FACTS

**A.   The Insurance Policy**

6      This case arises out of an insurance claim for lost

7  Business Income and Extra Expenses that Plaintiff filed

8  with Defendant.  Plaintiff is an auto transmission and

9  exhaust emission specialist company that operates its

10 principal place of business from an auto garage in

11 Corona, California.  In 2007, Defendant issued

12 Plaintiff a Premier Businessowners Policy ("the

13 Policy") to cover specific types of accidents or

14 property damage that could occur at Plaintiff's auto

15 garage.  During the policy period, November 2, 2007 to

16 November 2, 2008, the Policy covered the costs for

17 building replacement, business personal property,

18 potential loss of business income ("Business Income")

19 due to an accident, any extra expenses ("Extra

20 Expenses") that may occur during restoration, and other

21 miscellaneous costs.  The Policy, however, carried

22 policy limits of: (1) $617,300 plus 6% inflation for

23 building replacement, (2) $61,400 plus 2.9% inflation

24 for business personal property, (3) $10,000 for

25 increased construction costs, (4) $25,000 for debris

26 removal, and (5) $10,000 for actual costs incurred to

27 comply with enforcement of ordinance or law in the

28 course of any repair efforts by Plaintiff.

1    At issue between the Parties is Defendant's alleged
2  refusal to reimburse Plaintiff for (1) lost Business
3  Income and (2) Extra Expenses incurred.  For Business
4  Income, the Policy provides that Defendant will
5  reimburse Plaintiff for all Business Income loss, which
6  results from the forced suspension of business
7  operations after an accident.  The Policy does not have
8  any monetary limitations for Business Income but does
9  limit compensation to actual loss of Business Income
10  that occurs within 12 months after an accident.  For
11  Extra Expenses, the Policy provides that Defendant will
12  reimburse Plaintiff for Extra Expenses incurred to
13  avoid or minimize suspension of operations and to
14  continue operations.  Further, Defendant has an
15  obligation to reimburse Plaintiff for Extra Expenses
16  incurred (1) to repair or replace property or (2) to
17  restore lost information on damaged valuable papers and
18  records.  The Policy provides, however, that Extra
19  Expenses are only paid to Plaintiff to the extent that
20  the Extra Expense incurred by Plaintiff reduces the
21  amount otherwise payable as Extra Expenses or Business
22  Income.
23    Finally, the Policy requires Plaintiff to take
24  reasonable steps to protect all covered property from
25  further damage and to keep a record of such expenses
26  for consideration in the settlement of the claim.
27  However, such expenses do not increase any of the
28  policy limits of the insurance.

**B.    Property Damage at Plaintiff's Business**

On January 18, 2008, Plaintiff sustained a substantial partial fire loss at its garage, and Defendant commenced a claim investigation on the same date.  On January 21, 2008, Defendant issued Plaintiff a $25,000 advance to compensate for business personal property.  Within the first week of the loss, Defendant's claim adjuster, David Melton ("Melton"), was working with Plaintiff's public adjuster ("PA"), David Skipton, to facilitate emergency shoring and repairs required by authorities to allow entry to the red-tagged building and to provide temporary power.

On January 29, 2008, Melton took the recorded statement of Plaintiff's president, David Krattenmaker who claimed Plaintiff grossed $1 million annually. Defendant then advanced $50,000 under the Business Income coverage and obtained an agreed scope of repair. The next day, Melton commenced investigation of Plaintiff's Business Income claim by retaining Roberta Salata ("Salata"), a CPA, to evaluate the merits of the claim.   Between January and July 2008, Salata, the PA, and Melton exchanged various e-mails in which Defendant requested various financial documentation from Plaintiff that could help support Plaintiff's Business Income claim.  In March 2008, Defendant also paid Plaintiff $81,808.45 in building coverage and advanced Plaintiff an additional $50,000 in Business Income. On August 20, 2008, Defendant paid Plaintiff an

additional $409,749.98 for the building loss.  However, Melton sent Plaintiff a letter stating that it had not received documentation to support a Business Income claim.

On November 7, 2008, Defendant received an official Business Income loss claim from Plaintiff's PA, requesting an additional $143,099.94 for a six-month post-fire Business Income loss.  Plaintiff also requested $120,378.84 in an Extra Expense claim, which included a request for reimbursement of $68,000 in security expenses.  On November 21, 2008, Salata responded to the Business Income loss claim and requested various financial documents that Salata states had yet to be provided, including Plaintiff's general ledgers for 2007 and 2008.  Between November 2008 and January 2009, the Parties exchanged various letters and e-mails, in which  Defendant repeatedly reiterated its need for certain financial documents. Defendant, however, made certain payments to Plaintiff, which brought the total benefits paid to Plaintiff to $814,319.13.

During the course of 2009, the Parties exchanged multiple e-mails and letters, in which Plaintiff sent certain documents to Defendant, and Defendant asked for more documents.  On August 24, 2009, Defendant sent a letter to Plaintiff, explaining that Salata did not have sufficient documentation to accurately determine Business Income loss and as a result, it could only

1  estimate the Business Income loss at $29,181.

2  Defendant offered to meet with Plaintiff to discuss

3  additional documents needed to support the Business

4  Income claim.  In 2010, Plaintiff's attorney, Francis

5  Doherty became involved and hired an expert, Phil

6  Allman, who concluded that Plaintiff's Business Income

7  loss was $373,462.  Plaintiff also reiterated its

8  request for Extra Expenses.

9                  **II. LEGAL STANDARD**

10      Summary judgment is appropriate when there is no

11  genuine issue of material fact and the moving party is

12  entitled to judgment as a matter of law.  Fed. R. Civ.

13  P. 56(a).  A genuine issue is one in which the evidence

14  is such that a reasonable fact-finder could return a

15  verdict for the non-moving party.  Anderson v. Liberty

16  Lobby, 477 U.S. 242, 248 (1986).

17      A party seeking summary judgment always bears the

18  initial burden of establishing the absence of a genuine

19  issue of material fact.  Celotex Corp. v. Catrett, 477

20  U.S. 317, 322 (1986).  "Where the moving party will

21  have the burden of proof on an issue at trial, the

22  movant must affirmatively demonstrate that no

23  reasonable trier of fact could find other than for the

24  moving party."  Soremekun v. Thrifty Payless, Inc., 509

25  F.3d 978, 984 (2007).

26      Once the moving party makes this showing, the

27  non-moving party must set forth facts showing that a

28  genuine issue of disputed fact remains.  Celotex, 477

1   U.S. at 322.   The non-moving party is required by
2   Federal Rule of Civil Procedure Rule 56(e) to go beyond
3   the pleadings and designate specific facts showing a
4   genuine issue for trial exists.   Id. at 324.

**III. DISCUSSION**

**A.   <u>Evidentiary Objections</u>**

7        In ruling on a Motion for Summary Judgment, courts
8   consider only evidence that are admissible at trial.
9   Fed. R. Civ. P. 56(c).   Here, Defendant makes close to
10   350 evidentiary objections, and Plaintiff makes twenty-
11   seven of its own objections.   Given the number of
12   objections made by the Parties, the Court will address
13   the evidentiary objections in three separate orders.
14   For the purpose of this ruling, the Court has only
15   considered admissible evidence.

**B.   <u>Objection and Request to Strike Proposed Order</u>**

17        Defendant objects and requests the Court to strike
18   Plaintiff's Proposed Order Denying Motion for Partial
19   Summary Judgment filed on March 29, 2012 [91].   Upon
20   review, the Court **GRANTS** Defendant's request to strike
21   Plaintiff's Proposed Order [92].   Local Rule 7-10
22   states that "absent prior written order of the Court,
23   the opposing party shall not file a response to the
24   reply."   In this case, Plaintiff did not ask permission
25   from the Court to file a Sur-reply, yet Plaintiff still
26   filed a Proposed Order that is the equivalent of a sur-
27   reply.   The Court finds that this is a violation of
28   Local Rule 7-10, and the Court does hereby **STRIKES**

1  Plaintiff's Proposed Order.

2  **C.  <u>Motion for Partial Summary Judgment</u>**

3    In this Motion, Defendant moves the Court for

4  partial summary judgment of Plaintiff's claims for (1)

5  bad faith in the denial of Plaintiff's requests for

6  Business Income Loss reimbursement, (2) bad faith in

7  the denial of Plaintiff's requests for Extra Expenses,

8  and (3) punitive damages.

9    1. <u>Bad Faith in the Denial of Business Income Loss</u>

10     <u>Insurance Claim</u>

11    California law recognizes in every contract,

12  including insurance policies, an implied covenant of

13  good faith and fair dealing.  <u>Wilson v. 21st Century</u>

14  <u>Ins. Co.</u>, 42 Cal. 4th 713, 720 (2007).  In the

15  insurance context, the implied covenant of good faith

16  and fair dealing requires the insurer to refrain from

17  injuring its insured's right to receive the benefits of

18  the insurance agreement.  <u>Egan v. Mutual of Omaha Ins.</u>

19  <u>Cos.</u>, 24 Cal. 3d 809, 818 (1979).  In order to state a

20  claim for bad faith, a plaintiff has the burden of

21  showing that (1) the insurer withheld policy benefits,

22  and (2) that the withholding was unreasonable and

23  without proper cause.  <u>Love v. Fire Ins. Exch.</u>, 221

24  Cal. App. 3d 1136 (1990).

25    Under the "genuine dispute rule," "an insurer's

26  denial or delay in paying benefits only gives rise to

27  tort damages if the insured shows the denial or delay

28  was unreasonable."  <u>Wilson</u>, 42 Cal. 4th at 723.  Thus,

denial of benefits due to the existence of a genuine
dispute may give rise to liability for breach of
contract, but not bad faith.  <u>Id.</u>  A genuine dispute,
however, "exists only where the insurer's position is
maintained in good faith and on reasonable grounds."
<u>Id.</u>  "The reasonableness of an insurer's
claims-handling conduct is ordinarily a question of
fact."  <u>Amadeo v. Principal Mut. Life Ins. Co.</u>, 290
F.3d 1152, 1161 (9th Cir. 2002).  As such, the genuine
dispute rule only allows a district court to grant
summary judgment on bad faith claims where it is
undisputed that the basis for the insurer's decision
was reasonable.  <u>Id.</u>  "On the other hand, an insurer is
not entitled to judgment as a matter of law where,
viewing the facts in the light most favorable to the
plaintiff, a jury could conclude that the insurer acted
unreasonably."  <u>Id.</u> at 1162.

In this case, Defendant argues that it is entitled
to summary judgment on Plaintiff's bad faith claim for
denial of Business Income benefits because its decision
was governed by a genuine dispute concerning
Plaintiff's coverage under the policy.  The Court,
however, finds that triable issues of fact exist as to
whether Defendant acted reasonably.  As a result, the
Court finds that summary judgment is inappropriate.  In
handling Plaintiff's Business Income claim, Defendant
ultimately adopted the calculation of its CPA, finding
that Plaintiff was only entitled to $29,181 in Business

1  Income loss.   In contrast, Plaintiff originally

2  estimated Business Income loss at \$243,099.94, and now,

3  through an expert, has calculated this income loss at

4  \$373,462.   The Court finds that, at this stage, it

5  cannot determine which of these business income loss

6  calculations was correct, let alone whether Defendant

7  had a reasonable basis for choosing the significantly

8  lower estimate.

9      Defendant argues that, as a matter of law, it

10  cannot be liable for bad faith if it reasonably relied

11  on an expert's opinion, such as the calculations of its

12  CPA in this case.   However, the Court finds that

13  Defendant's reliance on its CPA's opinion does not

14  automatically insulate Defendant from bad faith

15  liability.   Reliance on an unreasonable expert opinion

16  or failure to conduct a thorough investigation can

17  still subject an insurance company to liability.

18  Guebara v. Allstate Ins. Co., 237 F.3d 987, 995.   Here,

19  the discrepancy between the Parties' estimations is

20  primarily due to Defendant's CPA's perception that

21  Plaintiff had submitted insufficient documentation to

22  support a larger business income loss calculation.

23  Defendant primarily argues that its CPA needed the

24  general ledgers from Plaintiff's business for the years

25  2007 to 2008 in order to assess the accuracy of

26  Plaintiff's business income loss calculation.

27  Defendant argues that because it only just recently

28  received the 2007 general ledger from Plaintiff and

still has not received the 2008 general ledger, its expert could only recommend a Business Income loss at the amount finally adopted by Defendant.

The Court, however, finds that a reasonable juror could find that Defendant's CPA was unreasonable in its calculation.  More specifically, triable issues of fact exist as to whether the CPA actually had all the documents necessary for a reasonable Business Income loss calculation.  Plaintiff proffers affidavits from three individuals that all testify that Plaintiff had given Defendant both the 2007 and 2008 general ledgers early in the claims process.  Furthermore, Plaintiff's expert witness, who is also a CPA, states that Plaintiff did submit enough documentation to justify its $373,462 Business Income loss calculation.

Based on the evidence presented, the Court cannot determine who is right without making a credibility determination, which would be inappropriate for a motion for summary judgment.  Thus, it is unclear whether Defendant had a reasonable basis for denying Plaintiff's Business Income claim.

Accordingly, because a reasonable juror could find that Defendant acted unreasonably in denying Plaintiff's Business Income claim, the Court **DENIES in part** Defendant's Motion for partial summary judgment with respect to Plaintiff's claim for bad faith in Defendant's denial of Plaintiff's Business Income loss request.

2. <u>Bad Faith in the Denial of Extra Expense Claim</u>

Defendant has also requested partial summary judgment on the bad faith claim as it pertains to Defendant's decision to deny Extra Expenses.  The Court, however, finds that triable issues of fact also exist with respect to the Extra Expenses, and as such, partial summary judgment is not appropriate.

More specifically, as Defendant has interpreted the Policy, a prerequisite for Extra Expense reimbursement is that all claimed Extra Expenses must reduce amounts otherwise payable as Business Income.  Defendant argues that it was reasonable in the denial of the Extra Expense claim because Plaintiff did not give Defendant enough documentation to support the Business Income claim.

The Court, however, finds that summary judgment on this issue is inappropriate because, as discussed earlier, there exists a genuine issue of material fact whether Plaintiff gave Defendant enough documentation to support the Business Income claim.  As such, given that the Extra Expense claim is inextricably linked to the Business Income claim, the Court finds that summary judgment as it pertains to the Extra Expense is premature at this stage.  Accordingly, the Court **DENIES** Defendant's Motion for partial summary judgment with respect to Plaintiff's claim for bad faith in Defendant's denial of Extra Expenses.

///

1

### 3. <u>Punitive Damages</u>

2     The California Civil Code provides that a plaintiff
3 is entitled to punitive damages "where it is proven by
4 clear and convincing evidence that the defendant has
5 been guilty of oppression, fraud, or malice."  Cal.
6 Civ. Code § 3294(a).  Malice is defined as "conduct
7 which is intended by the defendant to cause injury to
8 the plaintiff or despicable conduct which is carried on
9 by the defendant with a willful and conscious disregard
10 of the rights or safety of others." <u>Id.</u> § 3294(c)(1).
11 "Oppression" means despicable conduct that subjects a
12 person to cruel and unjust hardship in conscious
13 disregard of that person's rights.  <u>Id.</u> § 3294(c)(2).
14 Summary judgment on the issue of punitive damage is
15 only proper "when no reasonable jury could find the
16 plaintiff's evidence to be clear and convincing proof
17 of malice, fraud, or oppression." <u>Hoch v.</u>
18 <u>Allied-Signal, Inc.</u>, 24 Cal. App. 4th 48, 60-61 (1994).

19     In the instant Action, the Court finds that no
20 reasonable jury could find by clear and convincing
21 evidence that Defendant is guilty of despicable conduct
22 or oppression, fraud, or malice.  As indicated above,
23 for Defendant to prevail on summary judgment for
24 punitive damages, plaintiff's evidence has to be "clear
25 and convincing" of some type of malice, fraud, or
26 oppression.  Though a reasonable juror may find that
27 Defendant operated in bad faith given evidence that it
28 may have not acted reasonably, the evidence of

1  Defendant's unreasonableness is not "clear and
2  convincing" of oppression, malice, or fraud.

3      On the contrary, the undisputed evidence shows that
4  Defendant responded to Plaintiff's claim almost
5  immediately and made a number of advance payments to
6  Plaintiff before Plaintiff had submitted information to
7  verify its claim.  Among these advance payments
8  included a total of $100,000 in Business Income
9  advances.  Further, Defendant asserts, and Plaintiff
10 does not dispute, that Defendant has paid Plaintiff a
11 total $814,319.13 as a result of the loss.  Moreover,
12 it is undisputed that Defendant offered to meet with
13 Plaintiff and its representatives multiple times to
14 bring the claim to a conclusion and explain its
15 rationale for the denial of certain benefits.

16     Furthermore, Plaintiff cannot meet its burden given
17 that it has failed to produce any direct evidence
18 establishing fraud, malice, or oppression.  To support
19 its claim for punitive damages, all Plaintiff offers
20 are conclusory statements that Defendant attempted to
21 defraud Plaintiff from benefits.  These conclusory
22 statements are unsupported by factual allegations and
23 are insufficient to create a triable issue of fact so
24 as to preclude summary judgment.  Hansen, 7 F.3d at
25 138.

26     To distinguish from the bad faith claim, the
27 undisputed facts show that Defendant's overall conduct
28 was not that of oppression, malice or fraud.  "Punitive

1   damages are available if in addition to proving a
2   breach of the implied covenant of good faith and fair
3   dealing proximately causing actual damages, the insured
4   proves by clear and convincing evidence that the
5   insurance company itself engaged in conduct that is
6   oppressive, fraudulent, or malicious." Amadeo v.
7   Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164 (9th
8   Cir. 2002).  In this case, a reasonable juror may find
9   that Defendant ultimately was unreasonable and hence
10  operated in bad faith in denying Plaintiff's Business
11  Income and Extra Expenses insurance claims.

12      However, for punitive damages, Defendant, as the
13  moving party, has met its burden in showing an absence
14  of evidence showing oppressive, fraudulent, or
15  malicious conduct.  On the contrary, the Court finds
16  that Plaintiff, as the non-moving party, cannot meet
17  its burden in showing that there is clear and
18  convincing evidence to suggest that Defendant's alleged
19  unreasonableness rose to the level required for
20  punitive damages.  As such, in light of the high
21  threshold for establishing punitive damages and the
22  lack of any direct evidence of oppression, fraud, or
23  malice, Plaintiff's claim for punitive damages must
24  fail.

25      Accordingly, the Court **GRANTS** Defendant's Motion
26  for Partial Summary Judgment with respect to
27  Plaintiff's claim for punitive damages.  See e.g.,
28  Empey v. Allied Prop. & Casualty Ins. Co., 2012 WL

104662, *8 (Jan. 12, 2012, N.D. Cal.) (granting a
insurance company's motion for partial summary judgment
to preclude punitive damages but denying summary
judgment for some of the bad faith claims).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part
and **DENIES** in part Plaintiff's Motion for Partial
Summary Judgment.  The Court **DENIES** summary judgment as
it pertains to Plaintiff's bad faith claim.  The Court
finds that genuine issues of material fact remain
pertaining to the reasonableness of Defendant's denial
of Plaintiff's Business Income and Extra Expense
insurance claims.  The Court, however, **GRANTS** summary
judgment for Plaintiff's request for punitive damages
and hereby dismisses the punitive damages claim.
Accordingly, the remaining issues left to be resolved
in this Action are Plaintiff's claim for: (1) breach of
contract, (2) bad faith, (3) damages with the exception
of punitive damages, and (4) whether attorneys' fees
should be awarded.


DATED: April 27, 2012
**IT IS SO ORDERED.**

RONALD S.W. LEW

_____

**HONORABLE RONALD S.W. LEW**

Senior, U.S. District Court Judge

16