
O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A-1 TRANSMISSION AUTOMOTIVE TECHNOLOGY, INC., <br><br>　　　　Plaintiff,<br><br>　v.<br><br>AMCO INSURANCE COMPANY,<br><br>　　　　Defendant. | CV 10-8496 RSWL (SSx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |

After consideration of Defendant AMCO Insurance Company's ("Defendant") Motion for Partial Summary Judgment [43], this Court makes the following findings of fact and conclusions of law:

**UNCONTROVERTED FACTS**

1. Defendant issued A-1 Transmission Automotive Technology, Inc. ("Plaintiff") a Premier Businessowners policy ("the Policy"), policy no. ACP BPA 7851179200, effective November 2, 2007 to November 2, 2008, covering a commercial building at which A-1 performed auto repairs and smog-checks and covering business personal property ("BPP").  Decl. of Melton, ¶ 2;

1

Compendium of Exhibits ("COE") Ex. 1.

2. During the policy period, the Policy covered the costs for building replacement, business personal property, potential loss of business income ("Business Income") due to an accident, any extra expenses ("Extra Expenses") that may occur during restoration, and other miscellaneous costs.  Decl. of Melton, ¶ 2; COE Ex. 1.

3. The Policy, however, carried policy limits of: (1) $617,300 plus 6% inflation for building replacement, (2) $61,400 plus 2.9% inflation for business personal property, (3) $10,000 for increased construction costs, (4) $25,000 for debris removal, and (5) $10,000 for actual costs incurred to comply with enforcement of ordinance or law in the course of any repair efforts by Plaintiff.  Decl. of Melton, ¶ 2; COE Ex. 1.

4. The Policy did not have any monetary limitations for Business Income but did limit compensation to actual loss of Business Income that occurs within 12 months after an accident.  For Extra Expenses, the Policy provided that Defendant will reimburse Plaintiff for Extra Expenses incurred to avoid or minimize suspension of operations and to continue operations.  Decl. of Melton, ¶ 2; COE Ex. 1.

5. Defendant has an obligation to reimburse Plaintiff for Extra Expenses incurred (1) to repair or replace property or (2) to restore lost information on damaged valuable papers and records.  The Policy

provides, however, that Extra Expenses are only paid to Plaintiff to the extent that the Extra Expense incurred by Plaintiff reduces the amount otherwise payable as Extra Expenses or Business Income. Decl. of Melton, ¶ 2; COE Ex. 1.

6. On January 18, 2008, Plaintiff sustained a substantial partial fire loss at its garage, and Defendant commenced a claim investigation on the same date. Decl. of Melton, ¶ 3.

7. On January 21, 2008, Defendant issued Plaintiff a $25,000 advance to compensate for business personal property. Within the first week of the loss, Defendant's claim adjuster, David Melton ("Melton"), was working with Plaintiff's public adjuster ("PA"), David Skipton, to facilitate emergency shoring and repairs required by authorities to allow entry to the red-tagged building and to provide temporary power. Decl. of Melton, ¶ 3.

8. On January 29, 2008, Melton took the recorded statement of Plaintiff's president, David Krattenmaker who claimed Plaintiff grossed $1 million annually. Decl. of Melton, ¶ 4.

9. On the same day, Defendant then advanced $50,000 under the Business Income coverage and obtained an agreed scope of repair. Decl. of Melton, ¶ 4, 9; COE Ex. 12.

10. On January 30, 2008, Melton commenced investigation of Plaintiff's Business Income claim by

retaining Roberta Salata ("Salata"), a CPA, to evaluate the merits of the claim.  Decl. of Melton, ¶ 5; COE Ex. 6.

11. Salata has substantial experience evaluating losses for insurance companies.  Decl. of Melton, ¶ 5; Decl. of Salata ¶¶ 3-5.

12. Without general ledgers, Salata believed he could not determine true BI loss with certainty.  Decl. of Salata ¶¶ 20-21.

13. Between January and July 2008, Salata, the PA, and Melton exchanged numerous e-mails in which Defendant requested various financial documentation from Plaintiff that could help support Plaintiff's Business Income claim.  Decl. of Melton, ¶¶ 6-11.

14. In March 2008, Defendant paid Plaintiff $81,808.45 in building coverage and advanced Plaintiff an additional $50,000 in Business Income.  Decl of Melton, ¶¶ 7,9.

15. On August 20, 2008, Defendant paid Plaintiff an additional $409,749.98 for the building loss.  During the same time, Melton sent Plaintiff a letter stating that it had not received documentation to support a Business Income claim.  Decl. of Melton ¶ 16.

16. On November 21, 2008, Salata responded to the Business Income loss claim from Plaintiff and requested various financial documents including Plaintiff's general ledgers for 2007 and 2008.  Decl. of Melton, ¶ 19; Decl of Salata ¶¶ 12, 31.

17. During the course of 2009, the Parties exchanged multiple e-mails and letters, in which Plaintiff sent certain documents to Defendant, and Defendant asked for more documents. Decl. of Melton, ¶¶ 26-27; Decl. of Salata ¶¶ 46-51.

18. On August 24, 2009, Defendant sent a letter to Plaintiff, explaining that Salata did not have sufficient documentation to accurately determine Business Income loss, and as a result, Defendant could only estimate the Business Income loss at $29,181. Decl. of Melton, ¶ 30; COE Ex. 38.

19. Defendant offered to meet with Plaintiff to discuss additional documents needed to support the Business Income claim. Decl. of Melton, ¶ 30.

### CONCLUSIONS OF LAW

1. The California Civil Code provides that a plaintiff is entitled to punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a).

2. Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Id. § 3294(c)(1).

3. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. Id. §

1 | 3294(c)(2).

2 |     4. Summary judgment on the issue of punitive damage
3 | is only proper "when no reasonable jury could find the
4 | plaintiff's evidence to be clear and convincing proof
5 | of malice, fraud, or oppression."  <u>Hoch v.</u>
6 | <u>Allied-Signal, Inc.</u>, 24 Cal. App. 4th 48, 60-61 (1994).

7 |     5. In the instant Action, the Court finds that no
8 | reasonable jury could find by clear and convincing
9 | evidence that Defendant is guilty of despicable conduct
10 | or oppression, fraud, or malice.

11 |     6. Though a reasonable juror may find that
12 | Defendant operated in bad faith given the factual
13 | dispute that it may have not acted reasonably, the
14 | evidence of Defendant's unreasonableness is not "clear
15 | and convincing" of oppression, malice, or fraud.

16 |     7. On the other hand, Plaintiff cannot meet its
17 | burden given that it has failed to produce any direct
18 | evidence establishing fraud, malice, or oppression.

19 |     8. "Punitive damages are available if in addition
20 | to proving a breach of the implied covenant of good
21 | faith and fair dealing proximately causing actual
22 | damages, the insured proves by clear and convincing
23 | evidence that the insurance company itself engaged in
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

1 conduct that is oppressive, fraudulent, or malicious."
2 <u>Amadeo v. Principal Mut. Life Ins. Co.</u>, 290 F.3d 1152,
3 1164 (9th Cir. 2002).
4
5 DATED: April 27, 2012
6 **IT IS SO ORDERED.**

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge